UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| OSWALD NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:11-cv-00514 |
| | ) | Judge Trauger |
| v. | ) | |
| | ) | |
| DAVIDSON COUNTY SHERIFF'S OFFICE, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

On August 10, 2012, the Magistrate Judge issued a Report and Recommendation (R&R) (Docket No. 50) recommending that this action be dismissed with prejudice because there are no facts upon which a reasonable jury could find in favor of the plaintiff on his claims under 42 U.S.C. § 1983.

Pending before the court are objections to the August 10, 2012, R&R timely filed by the plaintiff (Docket No. 53). For the reasons discussed below, the court finds that the plaintiff's objections lack merit and should be overruled.

**I.   Introduction**

The plaintiff, currently an inmate of the Tennessee Department of Correction (TDOC), brought this *pro se, in forma pauperis* action pursuant to 42 U.S.C. § 1983, seeking three million dollars in damages for alleged violations of his civil rights and requesting a jury trial. (Docket No. 1). The plaintiff initially brought suit against the Davidson County Sheriff's Office (DCSO), "the Mental Health Department," and "the Medical Department." (*Id.*) By order and accompanying

1

Memorandum entered on June 13, 2011, the court dismissed the plaintiff's claims against "the Mental Health Department" and "the Medical Department" for failure to state claims upon which relief can be granted. (Docket Nos. 4 and 5). The court found, however, that the plaintiff had stated at least one colorable claim under the Eighth Amendment and directed that process issue as to the remaining defendant. (*Id*.)

The court then referred this action to the Magistrate Judge to enter a scheduling order, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court. (Docket No. 5). The Magistrate Judge set a non-jury evidentiary hearing for the purpose of determining whether the plaintiff's claims were meritorious and should be presented to a jury. (Docket No. 30). The evidentiary hearing was held on July 20, 2012. (Docket No. 48).

## II. Facts

The court has carefully reviewed the complaint (Docket No. 1), the transcript of the July 20, 2012, evidentiary hearing (Docket No. 48) including the testimony of the plaintiff and defense witness Paul Babb, and the Factual Findings in the Magistrate Judge's R&R (Docket No. 50 at pp. 3-6). The court concludes that the Factual Findings as set forth by the Magistrate Judge in the R&R accurately reflect the testimony given at the evidentiary hearing. Thus, the court hereby adopts those Factual Findings and incorporates them herein by reference.

## III. Report and Recommendations

In the August 10, 2012, R&R (Docket No. 50), the Magistrate Judge noted that, in issuing the R&R, she construed the evidence in the light most favorable to the plaintiff, gave the plaintiff

the benefit of all reasonable inferences that can be drawn from the evidence, and did not make any credibility determinations. (*Id.* at pp. 6-7). In so doing, the Magistrate Judge concluded:

> [T]he two inadequate medical care claims brought against Defendant DCSO should not proceed to trial and should be dismissed. There is simply insufficient evidence before the Court raising a genuine issue of material fact on these claims which require that the claims be heard by a jury. Based on the evidence which is before the Court, no reasonable jury could find that the medical care provided to the plaintiff was constitutionally inadequate.

(*Id.* at p. 8).

First, with regard to the plaintiff's need for mental health treatment, the Magistrate Judge assumed for purposes of the R&R that the plaintiff's evidence is sufficient to show a serious mental health need. Even so, the Magistrate Judge determined there was no evidence that the plaintiff was treated with deliberate indifference to his serious mental health needs. (*Id.* at pp. 8-10). The evidence shows that the plaintiff was not ignored. He entered the Criminal Justice Center on September 11, 2010, and was seen by an intake nurse at that time. No evidence was presented showing that the plaintiff was suffering from any type of acute mental health need that required immediate treatment. The intake nurse scheduled the plaintiff for a mental health assessment on September 17, 2010. For unknown reasons, the appointment did not occur and was rescheduled for ten days later. On September 27, 2010, the plaintiff was seen by a mental health provider and was provided with his mental health medications.

There is no evidence in the record showing that the initial seven day period it took for the first mental health assessment to be scheduled, the cancellation of the September 17, 2010, assessment, or the ten day period it took for the assessment to be rescheduled were acts taken with deliberate indifference to the plaintiff's need for mental health treatment. There is no evidence in

3

the record showing that the plaintiff suffered from significant mental health problems during the seventeen-day period he did not have his medications or exhibited behavior which was out of the ordinary or which obviously indicated that the plaintiff required immediate mental health treatment. (*Id.* at p. 9).

Second, with regard to the plaintiff's claim regarding his hand injury, the Magistrate Judge found that there is a dearth of evidence upon which a reasonable jury could conclude that the plaintiff suffered from a serious medical need regarding his hand. The plaintiff testified that, after he fell off the top bunk, his hand was swollen and painful and had a "knot." There is no evidence in the record that the plaintiff's hand injury was accompanied by any other type of objective symptoms indicating a serious medical needs such as broken skin or bleeding. The plaintiff was seen by a nurse and given a bandage to wrap around his wrist and hand. The plaintiff testified that the only lasting effect has been that he cannot put as much pressure on his wrist as he could prior to the injuries. He also testified that, after leaving the DCSO, a nurse practitioner examined him at the Charles Bass Correctional Complex and gave him a wrist support to wear. (*Id.* at p. 10).

Finally, the Magistrate Judge concluded that, even if a constitutional violation occurred in the treatment of the plaintiff's mental health problems or hand injury, the plaintiff has not set forth any evidence showing that the violation was caused by an official policy, custom, or practice of the DCSO.[1] (*Id*. at p. 11). Accordingly, the Magistrate Judge concluded that there are no facts upon which a reasonable jury could find in favor of the plaintiff on his delay/denial of treatment claims

---

[1] As noted by the Magistrate Judge, at the evidentiary hearing counsel for the DCSO noted that the DCSO is not a legal entity amenable to suit under Section 1983 but that he was not raising this argument for dismissal because substitution of the Metropolitan Government of Nashville and Davidson County in place of the DCSO would cure any problem with the DCSO being improperly named as a defendant. (Docket No. 50 at p. 11 n.2). However, counsel's statement does not negate the requirement that the plaintiff must prove all of the elements for municipal liability, one of which is that the plaintiff must show that the alleged violation was caused by an official policy, custom, or practice of the DCSO. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978).

under Section 1983.

IV.     **Standard of Review**

When a magistrate judge files a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the R&R to which a party specifically objects. Fed. R .Civ. P. 72(b)(3).

V.      **Plaintiff's Objections to the R&R**

In his objections to the R&R, the plaintiff first contends that, if the defendant had taken his complaints seriously about the state of the plaintiff's mental health, the defendant would not have placed the plaintiff in a top bunk upon his arrival at the Criminal Justice Center; had the plaintiff not been placed in a top bunk, he claims he would not have fallen off the bunk and injured his hand. (Docket No. 53 at p. 1).

The evidence shows that the plaintiff was evaluated by an intake nurse upon his arrival at the Criminal Justice Center. According to defense witness Paul Babbs, if the nurse felt that it was needed, the nurse could have referred the plaintiff to mental health staff at that time. She did not refer the plaintiff immediately for a mental health evaluation and instead scheduled him to be seen by a mental health care provider within a week. As discussed above, there is no evidence that the plaintiff's mental health status warranted more immediate treatment than that which he received. Although it is unfortunate that the plaintiff fell off the bunk and injured his hand, and while the decision to place the plaintiff on the top bunk could possibly have been negligent, given the plaintiff's self-described paranoia, the decision to place the plaintiff in the top bunk does not constitute an act of deliberate indifference to the plaintiff's serious mental health needs.

5

The plaintiff also contends that his hand and wrist should have been x-rayed because "we can't see thru [sic] skin and just because it didn't break the skin doesn't mean nothing [sic] was broken." (Docket No. 53 at p. 2). He feels as though the defendant was trying "to cover . . . up" its refusal to treat the plaintiff "by not taking x-rays, not answering [the plaintiff's] sick calls, [and] disregarding [the plaintiff's] mental health." (*Id.*) However, it is undisputed that the plaintiff was seen by a mental health care provider within seventeen days of his arrival at the Criminal Justice Center. It is undisputed that the plaintiff received some treatment for his hand/wrist injury. Medical staff at two different facilities determined that an x-ray was not warranted. Where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess prison officials' medical judgments and constitutionalize claims which sound in state tort law. *Berryman v. Rieger*, 150 F.3d 561, 565 (6th Cir. 1998)(citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see Estelle v. Gamble*, 429 U.S. 97, 107 (1976)(a prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation).

The plaintiff further complains that the defendant failed to respond to the plaintiff's many grievances while he was incarcerated at the Criminal Justice Center. (Docket No. 53 at pp. 2-3). This failure to respond, says the plaintiff, shows that the defendant acted with deliberate indifference to the plaintiff's mental health and medical needs. Although prisoners have a First Amendment right to file grievances, *see Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996), state law does not create a liberty interest in the grievance procedure. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). In other words, a plaintiff cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to

6

an effective jail grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the plaintiff here cannot support his § 1983 claim on the grounds that the various individual's responses to his grievances were not as he felt they ought to have been.

Essentially, the plaintiff believes that, if things had been done differently (i.e., he had been treated more quickly for his mental health problems, had been segregated from certain inmate populations, and had been given his mental health medication more quickly) his current circumstances would be better than they are. (Docket No. 53 at p. 4). Even if circumstances would have unfolded differently had different decisions been made at certain times, the plaintiff has not shown that the defendant acted with deliberate indifference to the plaintiff's needs.

Importantly, at no point in the plaintiff's objections does he address that he has failed to show that the alleged constitutional violations occurred pursuant to a policy, practice, or custom of DCSO or the Metropolitan Government of Nashville and Davidson County. Thus, even if the plaintiff had demonstrated deliberate indifference on the part of the defendant, the plaintiff simply has not identified any unconstitutional policy, practice, or custom of the defendant that led to the plaintiff's injuries.

## VI. Conclusion

After reviewing the pleadings and the record *de novo*, and considering the plaintiff's specific objections to the Magistrate Judge's Report and Recommendation entered on August 10, 2012, the

court agrees with the Magistrate Judge's analysis and recommendation and finds that this action should be dismissed. Therefore, the plaintiff's objections will be overruled, and the R&R will be adopted and approved.

An appropriate order will follow.

Aleta A. Trauger
United States District Judge